UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

UNITED STATES OF AMERICA    )
    )
               v.    )    1:07-cr-00073-JAW
    )
THOMAS I. HICKEY, III    )

**RESENTENCING ORDER**

Pursuant to *Johnson v. United States*, 135 S. Ct. 2551 (2015), this Court granted a defendant's habeas corpus petition and resentenced him without applying the enhanced sentencing provisions of the Armed Career Criminal Act (ACCA). This opinion explains this Court's resolution of two legal issues that arose during his resentencing. The Court rejects the defendant's proposal for so-called "banked time," which could allow the defendant to credit overserved time against a future sentence if his supervised release is revoked on this crime or if he commits a new federal offense. The Court also rejects the defendant's request to reduce his term of supervised release to account for overserved time on the original sentence of incarceration.

## I.    BACKGROUND

On January 17, 2020, the Court granted Thomas I. Hickey, III's Motion to Vacate, Set Aside, or Correct Sentence that he filed pursuant to 28 U.S.C. § 2255, ordered the United States Probation Office (PO) to complete a new Presentence Investigation Report (PSR), and requested a conference of counsel to discuss the prospect of resentencing Mr. Hickey. *Order on 28 U.S.C. § 2255 Mot.* at 4 (ECF No. 80). On January 28, 2020, the Court held a telephone conference of counsel, *Min.*

*Entry* (ECF No. 83), and on February 3, 2020, the PO completed the PSR. *Presentence Investigation Report* at 1 (*PSR*). At the conference of counsel, the Court set February 21, 2020, as the deadline for counsel to file a stipulation and for Mr. Hickey to file his memorandum and, if applicable, a waiver of the right to be present at the anticipated resentencing hearing. *Min. Entry* (ECF No. 83). The Court set March 13, 2020, as the date by which the United States (Government) would respond. *Id.*

In accordance with the deadlines, counsel filed a stipulation on February 20, 2020. *Joint Stips. for Sentencing* (ECF No. 84) (*Stip.*). Also on February 20, 2020, Mr. Hickey filed a waiver of the right to be present at his resentencing. *Def.'s Waiver of Presence at Resentencing Hr'g* (ECF No. 85). On February 21, 2020, Mr. Hickey filed his sentencing memorandum. *Def.'s Sentencing Mem.* (ECF No. 86) (*Def.'s Mem.*). On March 13, 2020, the Government filed its response. *Gov't's Resp. to Def.'s Sentencing Mem.* (ECF No. 87) (*Gov't's Resp.*). On April 23, 2020, at the Court's request, the parties filed a further stipulation placing the documents in the District of Massachusetts case to which the earlier stipulation referred on this Court's docket. *Joint Supp. Stip. for Sentencing* (ECF No. 89) (*Supp. Stip.*).

On May 18, 2020, the case was scheduled for a sentencing hearing by videoconference. *Min. Entry* (ECF No. 91). The Coronavirus Aid, Relief, and Economic Security Act (CARES Act), H.R.748, 116th Cong. (2020), together with the orders of the Chief Judge of this District allow a videoconference sentencing hearing if the judge "in the particular case finds for specific reasons that the . . . sentencing in that case cannot be further delayed without serious harm to the interests of justice"

and "the defendant consents to proceeding by video teleconference . . . after consultation with counsel."  General Order 2020-4 (D. Me. Mar. 31, 2020).

Although counsel for the Government and Mr. Hickey agreed to a videoconference hearing and even though Mr. Hickey previously waived his right to be physically present at the sentencing hearing, he waived the right to be present at the resentencing hearing before Congress enacted the CARES Act.  *Def.'s Waiver of Presence at Resentencing Hr'g* (ECF No. 85).  As explained by counsel, Mr. Hickey's waiver was based on his current custody in state jail in Massachusetts and the difficulty transporting him to Maine and back for the resentencing.  However, he had not waived the right to be present, as is now possible, at a videoconference resentencing.  Accordingly, the Court continued the resentencing hearing to allow counsel to explore whether a videoconference resentencing, which would include Mr. Hickey remotely, would be possible from his state jail in Massachusetts connecting him with a videoconference proceeding in the District of Maine and, if so, whether he wished to be present by videoconference at a rescheduled sentencing hearing or to waive that right as well.  On May 27, 2020, Mr. Hickey filed a second signed waiver in which he waived his right to be present through videoconference at the resentencing hearing.  *Def.'s Waiver of Presence by Video-Conf. at Resentencing Hr'g* (ECF No. 93).

On June 8, 2020, the Court held a resentencing hearing by videoconference and the Court resentenced Mr. Hickey to time served, three years of supervised release, a $100 special assessment, and no fine.  *Am. J.* (ECF No. 99).

3

## II. THE PRESENTENCE INVESTIGATION REPORT AND STIPULATIONS OF COUNSEL

On July 2, 2009, the Court imposed a term of incarceration of ninety-nine months for Mr. Hickey's possession of a firearm after being convicted of a felony with five years of supervised release to follow. *PSR* ¶ 1. Applying United States Sentencing Guideline (U.S.S.G.) § 5K1.1 and 18 U.S.C. § 3553(e), the Court's sentence was below the mandatory minimum of 180 months of incarceration then applicable to an Armed Career Criminal. *Id.* Mr. Hickey did not appeal the conviction or the sentence. Mr. Hickey was released on August 14, 2015, and began the five-year term of supervised release. *Id.* ¶ 2.

On February 3, 2016, as Mr. Hickey is a native of Boston, Massachusetts, this Court transferred jurisdiction of Mr. Hickey's case to the District of Massachusetts. *Id.*; *Transfer of Juris.* (ECF No. 69). On November 30, 2016, the PO filed a violation report with the United States District Court for the District of Massachusetts. *Supp. Stip.*, Attach. 1, *Violation Report* (*Violation Report I*). The Violation Report describes Mr. Hickey's failure to comply with seven supervised release conditions. *Violation Report I* at 3-6. The violations in general reflect a supervisee who was struggling to reintegrate into society after a significant period of incarceration, including multiple drug violations, failure to maintain contact with his supervising officer, and failure to regularly report to and maintain contact with his officer. *Id.*

On December 1, 2016, after Mr. Hickey admitted the violations, the United States District Court for the District of Massachusetts sentenced him to six months of incarceration to be followed by thirty-six months of supervised release. *PSR* ¶ 2;

*Stip.* ¶ 1 (citing *Min. Entry*, *United States v. Hickey*, 1:16-cr-10056-RGS (D. Mass.) (ECF No. 28)).  During the revocation sentencing, the District Judge reviewed the PO's proposal for Mr. Hickey's second release from prison and confirmed that the PO had developed a "thoughtful recommendation."  *Gov't Resp.*, Attach. 1, *Tr. of Probation Revocation Hr'g* at 3:10-7:07  He was released from BOP custody on February 15, 2017, and began his second period of supervised release.  *PSR* ¶ 2.

On April 28, 2017, the PO completed a second violation report on Mr. Hickey. *Supp. Stip.* Attach. 2, *Violation Report* (*Violation Report II*).  This report alleges that Mr. Hickey had violated two conditions of supervised release, including drug and alcohol conditions and a requirement that he participate in drug treatment.  *Violation Report II* at 2-3.  On May 17, 2017, Mr. Hickey again admitted the violations and the United States District Court for the District of Massachusetts sentenced him to eight months of incarceration and twelve months of supervised release.  *PSR* ¶ 2; *Stip.* ¶ 2 (citing *Min. Entry*, *Hickey*, 1:16-cr-10056-RGS (ECF No. 39)).  Mr. Hickey was released on December 22, 2017.  *PSR* ¶ 2.

On May 1, 2018, Mr. Hickey was arrested for his third violation of the terms of his supervised release.  *Id.*; *Stip.* ¶ 3 (citing *Min. Entry*, *Hickey*, 1:16-cr-10056-RGS (ECF No. 46)).  The Court released Mr. Hickey and scheduled a revocation hearing for June 13, 2018.  *PSR* ¶ 2; *Min. Entry*, *Hickey*, 1:16-cr-10056-RGS (ECF No. 46). Mr. Hickey failed to appear at the June 13, 2018, hearing and a warrant issued.  *PSR* ¶ 2; *Min. Entry*, *Hickey*, 1:16-cr-10056-RGS (ECF No. 49).

On December 6, 2018, the Boston Police Department arrested Mr. Hickey and charged him with Armed and Masked Robbery, Assault with a Dangerous Weapon, and Assault and Battery.[1]  *PSR* ¶ 2.  Mr. Hickey made his initial appearance on the revocation proceeding in the District of Massachusetts on January 16, 2019, and he was ordered detained until released from state custody.  *Id.*  He was remanded to the custody of the United States Marshall Service to be returned to state custody.  *Id.*  In addition to violations of the drug conditions, the Third Amended Petition dated January 16, 2020, describes the incidents that led to the new state criminal charges: (1) a September 5, 2018, assault and battery of his ex-girlfriend and her brother and a September 17, 2018, violation of an active restraining order; and, (2) a November 30, 2018, bank robbery with a firearm.  *Supp. Stip.*, Attach. 3, *3rd Am. Pet. and Aff. for Warrant or Summons for Offender Under Supervision* at 2-3 (*Third Am. Pet.*).  As of March 13, 2020, the revocation hearing on the third supervised release violation is scheduled in Massachusetts for later in the month of June.  *Gov't Resp.* at 2.

## III.   THE 28 U.S.C. § 2255 ORDER AND ITS IMPACT

On June 20, 2019, Mr. Hickey filed a pro se habeas corpus petition, seeking a ruling that his original sentencing of July 2, 2009, violated the United States

---

[1]      In *United States v. Marrero-Pérez*, 914 F.3d 20 (1st Cir. 2019), the First Circuit wrote that "as a matter of judicial policy, in this case and henceforth, no weight should be given in sentencing to arrests not buttressed by convictions or independent proof of conduct." *Id.* at 22.  As further explained by the First Circuit, a sentencing court may consider arrests when there is "greater indicia of reliability" beyond the mere fact of arrest to assure the court that "the conduct underlying the arrest[s] took place." *United States v. Rodríguez-Reyes*, 925 F.3d 558, 565 (1st Cir. 2019) (emphasis omitted) (quoting *Marrero-Pérez*, 914 F.3d at 24).  Here, the Government and Mr. Hickey stipulated that the Court may consider for purposes of resentencing a set of documents, including the contents of the Third Amended Petition and Affidavit for Warrant or Summons for Offender Under Supervision (Third Amended Petition). *Supp. Stip.*

Supreme Court case of *Johnson v. United States*, 135 S. Ct. 2551. *Mot. Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by Person in Fed. Custody* (ECF No. 70). He claimed that his prior convictions, which counted as predicate convictions for the ACCA in 2009, no longer counted under *Johnson v. United States. Id.* On September 27, 2019, the Government conceded. *Gov't Resp. to Mot. to Correct Sentence Under 28 U.S.C. § 2255* at 1 (ECF No. 79). On January 17, 2020, the Court issued an order granting Mr. Hickey's petition and ordering his resentencing. *Order on 28 U.S.C. § 2255 Mot.* at 4 (ECF No. 80).

To assess the practical impact of this order, the Court turns first to Mr. Hickey's July 2, 2009, sentencing. At the 2009 sentencing hearing, the Court found that Mr. Hickey had at least two prior felony convictions for crimes of violence, fixing his base offense level under the U.S.S.G. at twenty-four. *PSR* ¶ 5. However, the Court also found that Mr. Hickey had at least three violent felony convictions and therefore applied the provisions of the ACCA to him, resulting in an escalated base offense level of thirty-three. *Id.* The Court found that Mr. Hickey was entitled to a three-level reduction for acceptance of responsibility with a resulting total offense level of thirty. *Id.* Mr. Hickey had a criminal history category of VI. *Id.* His preliminary guideline sentencing range was 168 to 210 months of incarceration. *Id.* Because he qualified as an armed career criminal, however, he faced a mandatory minimum term of incarceration of 180 months, *id.*, and therefore his guideline sentence range was 180 to 210 months. *Id.*

7

Mr. Hickey benefitted from the provisions of U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e) and the Court was not bound by the mandatory statutory minimum sentence. *Id.* ¶¶ 1, 5. The Court imposed a term of ninety-nine months of incarceration and five years of supervised release. *Id.* ¶ 5; *J.* at 2-3 (ECF No. 67). Mr. Hickey served a total of seven years, five months, and eleven days or a total of eighty-nine months and eleven days before the Bureau of Prisons released him and he began to serve the five-year term of supervised release. *PSR* ¶ 2.

In its recently revised PSR, the Court fixed Mr. Hickey's new total offense level at twenty-one. *Id.* ¶ 16. Mr. Hickey's criminal history category remains VI. *Id.* ¶ 17. His newly-calculated guideline range for incarceration is seventy-seven to ninety-six months. *Id.* His term of supervised release under the Guidelines is one to three years. *Id.* The removal of the ACCA not only eliminates the fifteen-year statutory minimum sentence but also lowers the maximum statutory sentence to ten years and the maximum statutory term of supervised release to three years. *Id.* ¶ 3. The PO reclassified this federal crime as a Class C Felony. *Id.* ¶ 17.

## IV.   THE PARTIES' POSITIONS

### A.   Thomas I. Hickey, III's Position

Mr. Hickey acknowledges that the "posture of this case is unusual" in that he has already served the full sentence of incarceration that the Court imposed on July 2, 2009. *Def.'s Mem.* at 2. Mr. Hickey says that there is "value alone" in having a corrected sentence on the record, but he asks the Court for a further "accommodation" to "reduce his exposure in his revocation proceedings now pending in the District of

8

Massachusetts." *Id.* Mr. Hickey asks the Court to resentence him at the bottom of the newly-calculated guideline sentence range of seventy-seven months. *Id.* He says that such a sentence would "expose him to no additional time in his supervised release revocation proceedings." *Id.*

> Mr. Hickey writes:
>
> There is ample reason to conclude that, had [Mr. Hickey] been sentenced in 2009 under the imprisonment range from the revised presentence report, his sentence would have been even lower than this given the substantial downward departure he received at the time. In other words, he has served more than enough time in connection with his firearm conviction.

*Id.* at 2-3. Mr. Hickey says that under federal law, his argument is characterized as "banked time." *Id.* at 3. He admits that for First Step Act cases where the sentences of certain incarcerated defendants were statutorily reduced, there is a guideline provision, U.S.S.G. § 1B1.10(b)(2)(C), that does not allow banked time. *Id.* But he says his case is different because his overserved time does not arise from a statutory or guideline change but from a decision of the United States Supreme Court, which found a portion of the ACCA unconstitutional. *Id.*

Anticipating the Government's argument against banked time, Mr. Hickey argues that the policy issues are blunted in his case because (1) he "did not seek a reduction of his original sentence until after he had been summonsed for the supervised release violation (and had served sentences on 2 earlier revocations)" and (2) he "will realize no benefit against any state sentence he might receive." *Id.*

Mr. Hickey also anticipates that the Government will argue that he should seek relief not from this Court in resentencing him for the original offense but from

the United States District Court in Massachusetts, which will be sentencing him on his newest revocation petition. *Id.* at 3-4. Although he agrees that he "could argue" to the Massachusetts federal judge that he should receive credit for any sentence imposed on the revocation petition because he overserved time on his original sentence, he stresses that the Court has the discretion at this resentencing to "order a prison sentence that is fair and reasonable considering relevant sentencing factors under 18 U.S.C. § 3553." *Id.* at 4. Mr. Hickey views this alternative as appropriate even though the result would be that he is not exposed to any further incarceration under the pending revocation proceeding in Massachusetts because "it would result from [Mr. Hickey]'s having already served sufficient time in connection with this offense, and would cause no injustice."

As an alternative, Mr. Hickey urges the Court to impose no term of supervised release in this resentencing. *Id.* Citing Fourth Circuit authority, Mr. Hickey says that the Court has the discretion to order no supervised release for a federal defendant who has overserved his period of incarceration. *Id.* (citing *United States v. Ketter*, 908 F.3d 61, 66 (4th Cir. 2018)).

In sum, Mr. Hickey asks that the Court "impose a sentence of 77 months or, should the Court decide to impose a longer sentence, that the Court order no term of supervised release in resentencing [Mr. Hickey] in this matter." *Id.*

## B.   The Government's Position

In its response, the Government observes that Mr. Hickey fails to cite any case that has adopted the position regarding banked time that he is espousing here.

*Gov't's Resp.* at 3.  The Government cites caselaw that has disapproved the concept of banked time on public policy grounds.  *Id.* at 3-4.  The Government argues that the Court's adoption of either of Mr. Hickey's proposals would constrain the Massachusetts federal judge's options in addressing the pending petition for revocation: "he could avoid punishment for conduct that occurred while he was serving a lawful term of supervised release and any 'banked' time could have a real and serious impact on his future performance on supervised release." *Id.* at 4.  The Government rejects Mr. Hickey's claim that he should now benefit from his prior cooperation, noting that he has "received the benefit of the departure that his cooperation produced." *Id.*

The Government notes that Mr. Hickey "has not made good use of the time that he earned." *Id.* at 5.  The Government points out that Mr. Hickey is facing his third revocation proceeding and the latest allegations concern new criminal conduct. *Id.*

Regarding Mr. Hickey's request that the Court shorten or eliminate the term of supervised release to make up for overserved time, the Government observes that this Court previously rejected a similar request.  *Id.* (citing *United States v. Powell*, 1:03-cr-00061-JAW, 2015 WL 8957629, 2015 U.S. Dist. LEXIS 168585 (D. Me. Dec. 15, 2015)).

Finally, the Government notes that one alternative for Mr. Hickey would be to file a motion to modify or terminate his term of supervised release.  *Id.*

The Government urges the Court to impose a time-served sentence followed by three years of supervised release.  *Id.* at 6.

## V.   DISCUSSION

### A.   The Impact of Changed Sentencing Classifications on Thomas I. Hickey, III: A Summary

As the Court understands it, the new arithmetic underlying Mr. Hickey's banked time argument starts with the new sentencing classification for his felon in possession of a firearm crime from a Class A to a Class C felony.  *See* 18 U.S.C. §§ 922(g)(1), 924(a)(2), 3581(b).  The reduced classification lowers the statutory term of incarceration from a mandatory minimum of fifteen years to a maximum of life to a maximum of not more than ten years.  *Compare* 18 U.S.C. § 924(e)(1), *with* 18 U.S.C. § 924(a)(2).  With the reduced classification, the new statutory maximum term of supervised release is lowered from five to three years, *compare* 18 U.S.C. § 3583(b)(1), *with* 18 U.S.C. § 3583(b)(2), and the new statutory term of imprisonment for violation of supervised release is lowered from five to two years for each violation.  *See* 18 U.S.C. § 3583(e)(3).  The maximum term of additional supervised release is three years reduced by any term of imprisonment imposed on a revocation of his supervised release.  *See* 18 U.S.C. § 3583(h).

The practical effect of these new numbers is that by statute on resentencing, the Court may not impose a term of more than one hundred and twenty months and may not impose a term of supervised release of more than three years.  Mr. Hickey faces a potential term of incarceration of not more than two years on the pending

revocation petition.  His potential maximum term of three years of additional supervised release after any revocation sentence must be reduced by the amount of time he has served on prior revocation proceedings or by fourteen months.  *See PSR* ¶ 2.  This would leave twenty-two months available as a potential term of supervised release after serving any term of imprisonment imposed at the upcoming revocation hearing.

### B.    Banked Time

At this resentencing, the Court will not bank time that Mr. Hickey overserved. It is controversial whether a sentencing court can or should credit an individual like Mr. Hickey with overserved time by allowing him to bank the overserved time against a future sentence.

As Mr. Hickey concedes, the U.S.S.G. prohibit banking overserved time.  *Def.'s Mem.* at 3.  U.S.S.G. § 1B1.10(b)(2)(C) provides:

> (C)  PROHIBITION.  —In no event may the reduced term of imprisonment be less than the term of imprisonment the defendant has already served.

But Mr. Hickey argues that his request is not based on an application of the U.S.S.G. and therefore § 1B1.10(b)(2)(C)'s prohibition does not apply.  *Def.'s Mem.* at 3.  Mr. Hickey explains that the "sentencing change does not arise from a Guideline amendment, but rather as a result of the Supreme Court's having found a portion of the A[CCA] unconstitutional."  *Id.*  Mr. Hickey cites no case where a federal court allowed a defendant to bank time.[2]

---

[2]      Mr. Hickey cites *United States v. Lewis*, 398 F. Supp. 3d 945 (D.N.M. 2019) for the proposition that "[t]his issue appears to have come up from time-to-time in connection with the First Step Act."

The Government cites caselaw that casts doubt of the practice of banking overserved time. *Gov't's Resp.* at 3-4 (citing *Miller v. Cox*, 443 F.2d 1019, 1021 (4th Cir. 1971); *United States v. McDonald*, No. 3:09-cr-0006, 2020 WL 1016351, at *3, 2020 US Dist. LEXIS 36116 (W.D. Va. Mar. 3, 2020); *United States v. Smith*, No. 5:05-cr-30044, 2019 WL 3557886, at *3-4, 2019 U.S. Dist. LEXIS 130825 (W.D. Va. Aug. 5, 2019); *United States v. Jackson*, No. 5:03-cr-30093, 2019 WL 613500, at *3-4, 2019 U.S. Dist. LEXIS 24039 (W.D. Va. Feb. 13, 2019)).  As expressed by the Fourth Circuit in *Miller*, banked time would "provide a sense of immunity and an incentive to engage in criminal conduct."  *Miller*, 443 F.2d at 1021.

Around the same time the Government filed its memorandum, the Fourth Circuit handed down *United States v. Jackson*.  952 F.3d 492 (4th Cir. 2020).  The Fourth Circuit reviewed the different circumstances where the concept of banked time might be applicable.  *Id.* at 497-98.  Significantly, the Fourth Circuit affirmed its conclusion in *Miller* that it is "unthinkable" that a defendant could bank time for a vacated conviction against new criminal conduct.  *Id.* at 498 (quoting *Miller*, 443 F.2d at 1021).

The *Jackson* Court limited the possibility of banked time to whether, as Mr. Hickey is proposing here, a defendant who overserved a term of incarceration could gain a credit against future supervised release violations for the same crime.  *Id.* at 498-99.  But, in *Jackson*, the district court considered a case where a defendant had

---

*Def.'s Mem.* at 3 (citing *Lewis*, 398 F. Supp. 3d at 973).  But he does not claim that *Lewis* supports his argument that he should be allowed to bank time.  The Court reviewed *Lewis* and concludes that it is not germane to the issue before the Court in this motion.

been originally sentenced to 240 months of incarceration, which was subject to a reduced sentence under the First Step Act. *Id.* at 494. The defendant had served approximately 177 months and the district court imposed a time-served sentence. *Id.* at 494-95. The defendant urged the sentencing judge to impose a sentence of 120 months and allow him to bank the excess time of fifty-seven months against a future term of imprisonment if he violated his supervised release. *Id.* The district judge rejected his request for a 120-month sentence, reasoning that "the need to protect the public and the need for deterrence dictated that [the defendant] not be given banked time to offset the penalties for future violations of his supervised release, including future crimes." *Id.* at 495. The Defendant appealed, claiming that it was improper for the district court even to consider the possibility of banked time in arriving at an appropriate sentence. *Id.*

On this narrow question, the Fourth Circuit first concluded that "a defendant is not entitled to a sentence that would result in banked time." *Id.* at 499. At the same time, the *Jackson* Court also concluded that the district judge did not abuse her discretion in considering the possibility of banked time in determining an appropriate sentence on resentencing and whether to resentence a defendant for less than the time he has already served. *Id.* at 495.

Neither counsel cited a First Circuit case on the appropriateness of banked time and the Court found none. This Court is skeptical about the notion that a defendant should be allowed to bank time against either new criminal conduct or a supervised release violation, even if the person is serving a period of supervised

15

release as part of the unitary sentence for which there was overserved prison time. The Court concurs with the Fourth Circuit that a credit against a sentence for new criminal conduct would be "unthinkable." Similarly, a credit against a violation of the conditions of supervised release (a wider range of misconduct including potentially, as here, new criminal conduct) is also inadvisable. To credit overserved time against future misconduct would grant impunity to the extent of the credit and correspondingly limit the authority of a court or supervising officer. To allow banked time against future violations of law or supervised release strikes the Court as terrible public policy.

Finally, even if a court could in the exercise of its discretion grant a particular defendant banked time, the Court would not do so in Mr. Hickey's case. Mr. Hickey's right to resentencing did not come about as a result of circumstances unique to his case; rather, he was the beneficiary of an intervening Supreme Court case that applied to all defendants in his situation. In other words, the Court properly sentenced Mr. Hickey in 2009 based on the law as it then existed and did not commit a sentencing error that resulted in Mr. Hickey overserving time. Nor has Mr. Hickey demonstrated during his period of supervised release that his history and characteristics, the nature and circumstances of his offense and supervised release violations, and the other factors in 18 U.S.C. § 3553(a) justify according him banked time against future misbehavior.[3]

---

[3] Mr. Hickey correctly points out that the banked time credit would not apply to the pending criminal charges in the commonwealth of Massachusetts. *Def.'s Mem.* at 3. Even so, there is no guarantee the federal government will not elect to prosecute Mr. Hickey for bank robbery, which is often, though not always, charged federally, even when initially charged by the state. If the federal

### C.     Overserved Time to Reduce Term of Supervised Release

In addition, the Court will not reduce Mr. Hickey's term of supervised release by the amount of his overserved time. The Court generally addressed this issue in *Powell* and concluded that *United States v. Johnson*, 529 U.S. 53 (2000), and *Pepper v. United States*, 562 U.S. 476 (2011), as well as *Francis v. Maloney*, 798 F.3d 33 (1st Cir. 2015), counsel against crediting overserved sentences against terms of supervised release. 2015 WL 8957629, at *1-2, 2015 U.S. Dist. LEXIS 168585, at *3-5. The Supreme Court interpreted 18 U.S.C. § 3624(e) to mean that the term of supervised release begins at the point the inmate is released from prison. *United States v. Johnson*, 529 U.S. at 60 ("The statute, by its own necessary operation, does not reduce the length of a supervised release term by reason of excess time served in prison"). In *Pepper*, the Supreme Court wrote that "[s]upervised release follows a term of imprisonment and serves an entirely different purpose than the sentence imposed under [18 U.S.C.] § 3553(a)." 562 U.S. at 502 n.15. In *Francis*, the First Circuit concluded that "[*United States v.* ]*Johnson* binds us." 798 F.3d at 39.

Even though the issue in *United States v. Johnson*, *Pepper,* and *Francis* was slightly different, each decision suggests that, if not forbidden, a court should be careful about trading time in incarceration for time on supervised release because the two types of penalties serve different purposes. Courts have considered a federal sentence, often a period of incarceration followed by a period of supervised release, to be unitary; nevertheless, courts have also acknowledged that the purposes of

government charges and convicts Mr. Hickey with the bank robbery, the issue of credit for new federal crimes will become real, not hypothetical.

incarceration and supervised release differ. *Jackson*, 952 F.3d at 498 ("Although custodial and supervised release terms are components of one unitary sentence, they serve different purposes" (internal citation omitted)).[4]

The only case where the First Circuit even obliquely addressed this issue is *United States v. Carter*, 860 F.3d 39 (1st Cir. 2017), a case not cited by the parties. In *Carter*, the First Circuit wrote:

> The fact that Carter has completed his prison sentence does not moot his sentencing challenge. In simple terms, if the sentencing guidelines treated his criminal conduct as warranting much less prison time than the district court thought was the case, the district court might well adjust the length of supervised release deemed appropriate.

*Id.* at 43 (internal citation omitted). The *Carter* case, however, did not involve overserved time and is not directly relevant to the issues before the Court here.

Assuming the Court could trade excess time in prison for time on supervised release, and *Carter* suggests it is possible, this is not the case to do it. Mr. Hickey

---

[4]  Mr. Hickey cites *Ketter*, a Fourth Circuit case, in support of his contention that a court may reduce a term of supervised release to account for overserved prison time. *Def.'s Mot.* at 4 (citing *Ketter*, 908 F.3d at 66). In citing *Ketter*, Attorney Haddow, who is a precise and careful attorney, used the citation "Cf." THE BLUEBOOK: A UNIFORM SYSTEM OF CITATION R. 1.2 (Columbia Law Review Ass'n et al. eds., 20th ed. 2015) ("*Cf.* Cited authority supports a proposition different from the main proposition but sufficiently analogous to lend support"). The Court agrees with Attorney Haddow that the authority in *Ketter* is different but analogous.

In *Ketter*, the Fourth Circuit was not addressing whether a court could or should reduce a period of supervised release to make up for overserved prison time. The defendant in *Ketter*, like Mr. Hickey, benefitted from *Johnson v. United States* and on resentencing the district judge resentenced him to time served, even though a time-served sentence substantially exceeded his newly-calculated guideline range. *Id.* at 64. The defendant challenged the time-served sentence on the ground that the trial judge failed to adequately explain why he varied upward from the newly-calculated guideline range. *Id.* at 66-67. The Fourth Circuit noted that the trial judge reduced the defendant's term of supervised release to account for his overserved time and the Fourth Circuit used the district court's explanation for doing so to justify the upward variance. *Id.* at 67. The Fourth Circuit did not directly address whether a district court can or should trade overserved prison time for a reduced term of supervised release since the issue was not before it. Even so, Attorney Haddow is correct that the Fourth Circuit did not disapprove of the sentencing judge's trade-off in *Ketter*. This Court finds *Ketter* to be of limited usefulness in addressing the issue now before it.

has had an exceedingly difficult time complying with the terms of supervised release despite the considerable efforts of the PO in the District of Massachusetts to ease his transition from prison to freedom.   Unfortunately, despite efforts of the PO to structure comprehensive re-entry programs, Mr. Hickey repeatedly violated the terms of the programs and was uncooperative with mandated treatment.  The most recent charges indicate that Mr. Hickey is not merely a risk to himself but to others. Mr. Hickey's history suggests that the United States District Court in Massachusetts should have the ability to consider the possibility of further supervised release in its attempt to fashion an appropriate sentence at the upcoming revocation hearing.

Second, the Court has not seen Mr. Hickey for almost eleven years; the Court sentenced him in 2009 and has not seen him since.  His case has been formally transferred to the District of Massachusetts, he has appeared twice before a judge of the United States District Court in Massachusetts for revocation hearings and sentences, and he is scheduled for a third.  If the decision to reduce supervised release is discretionary, it makes no practical sense for this Court with its distant direct encounters with Mr. Hickey to constrain the range of options available to the District Judge in Massachusetts in the upcoming revocation hearing and the Court will not do so.  Finally, the highly experienced District Judge in Massachusetts, who will sentence Mr. Hickey for his recent violations, is no doubt thoroughly familiar with the workings of the Commonwealth's criminal justice system and in a much better position to integrate the likely result of the pending state charges in fashioning a revocation sentence, including any federal supervised release, that considers the

19

possibility that Mr. Hickey may serve prison time in the Commonwealth and, upon release, be subject to a period of state probation.

## VI.   CONCLUSION

In resentencing the Defendant, the Court imposes a term of time-served in his resentencing and a period of supervised release to follow not to exceed three years.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 9th day of June, 2020